v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1998.

Decided Oct. 21, 1998.

Publication Ordered Dec. 16, 1998.

pairment of body function." *Dodson,* 665 A.2d at 1233–1234 n. 16.

Donald Marritz, Carlisle, for petitioner.

Carol L. Van Horn, Chambersburg, for intervenor, Franklin County Children & Youth Services.

Before PELLEGRINI, J., FRIEDMAN, J., and NARICK, Senior Judge.

1. Section 6303(a) of the CPSL defines an "indicated report" as "[a] child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:
 1. Available medical evidence.
 2. The child protective service investigation.
 3. An admission of the acts of abuse by the perpetrator."
 23 Pa.C.S. §6303(a).

PELLEGRINI, Judge.

J.K. petitions for review of the February 13, 1998 order of the Pennsylvania Department of Public Welfare (Department) which adopted the recommendation of a hearing examiner to deny J.K.'s request to expunge an indicated report of child abuse naming him as the perpetrator. *See* the Child Protective Services Law (CPSL), Act of December 19, 1990, P.L. 1240, *as amended,* 23 Pa.C.S. §§6301–6385.

The events giving rise to the expungement hearing began on March 3, 1996, when a report of alleged abuse of M.K., a 13–year old girl, by her father, J.K., was made to the Child Abuse Hotline and referred to the Franklin County Children and Youth Services (Agency). At that time, J.K. shared custody of M.K., and when he had custody or visitation, M.K. would stay at his residence. Wayne Ott (Ott), an Agency caseworker, conducted an investigation during which he interviewed M.K. and both of her parents. On April 1, 1996, an "indicated" [1] report of child abuse of M.K. was filed against her father, J.K., and notification of that report was sent to both parents. Although the Agency referred the case to the Pennsylvania State Police (PSP) which conducted an investigation, because the PSP found the allegations of abuse by J.K. to be unfounded, no criminal charges were brought against J.K.

J.K. sought to have his name expunged from the statewide central registry and filed an appeal with the Department. At the hearing, the Agency presented the testimony of its caseworker, Ott, who had interviewed M.K. on several occasions regarding the alleged abuse by J.K. Ott testified that he interviewed M.K. on March 7, 1996, at which time she had related the following to him:

Pursuant to Section 6336 of CPSL, 23 Pa.C.S. §6336, a central statewide registry is maintained of all "founded" and "indicated" reports of child abuse. *See also L.W.B. v. Sosnowski,* 117 Pa. Cmwlth. 120, 543 A.2d 1241 (Pa.Cmwlth.1988). An entry of an indicated or founded report of abuse against a person in the central register may adversely affect that person's ability to obtain employment in a child-care facility or program or a public or private school. 23 Pa.C.S. §6338.

- J.K. fondled her between her legs and touched her breast area during the past six months of visits, the last incident occurring in February of 1996;
- J.K. would enter the bathroom while she was bathing and refuse to leave even though she was upset;
- she would awaken to J.K. touching her;
- she would awaken the next morning in a place different from where she fell asleep and with clothing missing; and
- this upset her so bad on one occasion that she left her father's house through the upstairs window, jumped off the porch roof into the snow, crying and begging for J.K. to stop.

In addition to Ott's testimony, the Agency offered a May 24, 1996 transcript from the custody hearing between J.K. and his former wife in the Court of Common Pleas of the 39th Judicial District, Franklin County Branch, at which M.K. had testified. In that custody hearing, M.K. testified that:

- "when he put his arm around me he got really close to my chest and felt like he was going to dig in my privacy";
- he would put his arm around her and let his arm hang down to her breast area;
- when she had her period, J.K. would rub the inside of her legs, very close to her "private parts;"
- although he got close to her breasts and private parts, he did not actually touch them;
- J.K. never rubbed her stomach or legs when she did not have clothes on;
- J.K. would, on occasion, come up to her and rub her back and stick his hand up her shirt from the bottom;
- J.K. would often intrude on her in the bathroom taking a shower or in her bedroom changing clothes;
- she would go to sleep in her room dressed in sweats and would awaken the next day downstairs and undressed; and

- J.K. touched her genital area twice when she was clothed when he rubbed up against her and his fingers went between her legs.

Ott also testified that he interviewed J.K. on March 11, 1996, but that J.K. would not stick to the interview subject or answer questions.

The Agency also introduced medical records from the Meadows Psychiatric Center (Meadows) and a July 23, 1996 report issued by Eric K. Bonsall, M.D., in which Dr. Bonsall diagnosed M.K. as suffering from "psychological stressors with history of sexual and physical abuse." He also found her to be suffering from post traumatic stress disorder.

At the expungement hearing, J.K., appearing *pro se*, denied the incidents of abuse, claiming the matter was a conspiracy by his ex-wife, Ott and the Agency. Objecting to M.K.'s testimony from the custody proceeding transcript, J.K. requested M.K. to testify, subject to his cross-examination. The hearing examiner refused, stating, "[n]o, I don't believe they have brought M.[K.] here to be cross-examined. That is not necessarily a requirement in these proceedings. And you did not request her to be here today." The hearing examiner admitted the former testimony of M.K. from the custody proceeding, the medical records of the Meadows and Dr. Bonsall, and also an August 28, 1996 report issued by James W. Nutter, Ph.D., who recommended that J.K. be given unrestricted visitation and ignored the alleged sexual abuse by J.K.

█ The hearing officer found the testimony of J.K. and the report of Dr. Nutter not credible and the prior recorded testimony of M.K., Ott and Dr. Bonsall credible. He found that M.K. was sexually abused by J.K. and recommended to the Agency that it again refer the allegation of sexual abuse to the local police or Pennsylvania State Police (PSP).[2] The hearing examiner denied J.K.'s appeal and J.K. filed a request for reconsideration alleging, *inter alia*, that the hearsay

2. Prior to the expungement hearing, after the matter was initially referred to the Agency, the allegation of abuse was referred to the PSP. Although the PSP report was available at the time of the expunction hearing, it was not con-

sidered or discussed in the hearing examiner's opinion. We note, however, that the investigation by the PSP conducted in March of 1996 resulted in the charge of sexual abuse against J.K. being determined to be unfounded.

evidence was inadmissible and that the Agency presented no proper corroborative evidence. Without addressing J.K.'s contentions, the Department issued a "final order on the merits" in which it adopted the findings and decision of the hearing examiner as final. This appeal by J.K. followed [3] in which he contends that the Department's decision should be reversed and the report of child abuse naming him as the perpetrator should be expunged because it was based solely on inadmissible hearsay so that there was no substantial evidence to support that decision.

### A.

J.K. contends that Ott's testimony did not comply with the mandate set forth by our Supreme Court in *A.Y. v. Commonwealth, Department of Public Welfare*, 537 Pa. 116, 641 A.2d 1148 (1994), or with the requirements for the admissibility of a child's hearsay in Section 5986 of the Judicial Code, 42 Pa.C.S. §5986. Section 5986 of the Judicial Code provides:

A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile

matters), involving that child or other members of that child's family, if *a court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability*. (Emphasis added). 42 Pa.C.S. §5986.

In *A.Y., supra*, our Supreme Court considered the admissibility of the hearsay testimony under 42 Pa.C.S. §5986 concerning the statements of a three-year old girl made to a caseworker and testified to by that caseworker in an expungement hearing.[4] In *A.Y.*, an "indicated" report of child abuse against A.Y. was placed in the central registry and A.Y. sought to have her name expunged. A hearing was held before a hearing examiner at which the Agency presented the testimony of the investigating caseworker, a representative of the Family Intervention Center and L.K.'s mother. L.K. did not testify. A.Y. testified on her own behalf and presented testimony from her former supervisor and her parents. The hearing examiner gave no weight to A.Y.'s witnesses on the grounds that they had no direct knowledge of what had transpired on the night in question, but concluded that the testimony from the Agency workers and L.K.'s mother provided substantial evidence in support of the indicated report of child abuse. The hearing examiner recommended that A.Y.'s appeal be denied and the Department fully adopted that rec-

---

**3.** Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether the findings of fact were supported by substantial evidence. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995).

**4.** M.K. was 13 years of age at the time the alleged abuse occurred and was 14 years of age at the time of J.K.'s expungement hearing, so she is not typical of the "children" to whom Section 5986 of the Judicial Code was intended to apply. M.K. was able to testify as to the alleged sexual abuse at the age of 13 at her parents' custody hearing. Moreover, in *Bedford County Children & Youth Services v. Department of Public Welfare*, 149 Pa.Cmwlth. 127, 613 A.2d 48 (Pa.Cmwlth. 1992), we expressed our reservations concerning the applicability of Section 5986 to a *nine*-year old child, let alone a *14*-year old child. In *Bedford County*, we opined that our prior decisions regarding the applicability of Section 5986 of the Judicial Code related to fashioning a rule regarding the administration of hearsay statements in cases involving *young children who*

*could not present other independent non-objectionable testimony* sufficient to establish substantial evidence. (Emphasis added). Finally, Section 5985.1 of the Judicial Code, 42 Pa.C.S. §5985.1, relating to the admission of a child's hearsay in criminal proceedings, provides:

(a) General rule. An out-of-court statement made by a child victim or witness, who at the time the statement was made was *12 years of age or younger*, describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the child by another, not otherwise admissible in evidence in any criminal proceeding if:
(1) the court finds, in an in camera hearing, that the evidence is relevant and the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2) the child either:
(i) testifies at the proceeding; or
(ii) is unavailable as a witness. (Emphasis added).

ommendation. After this court affirmed the denial of A.Y.'s expungement request, she appealed to our Supreme Court.

Before the Supreme Court, A.Y. contended that the testimony of the Agency employees as to what the child had told them was insufficient to satisfy the Agency's burden because it was uncorroborated, inadmissible hearsay. She argued that the Department erred in basing its decision not to expunge the *indicated* report against her solely on hearsay evidence, and that the evidence, *in toto,* did not satisfy the standard to support a report of indicated abuse. The Court noted that A.Y.'s name had been placed on a state-wide registry without there having been any adjudication, and when she was required to institute expungement proceedings, the Agency was able to justify its action without producing any victim, any corroborative evidence, any recording of the victim's interview or even a verbatim transcript of the victim's statement. The Court found that the Agency was able to rely on its own employees' recitation of what the three-year old child stated had occurred, resulting in A.Y. being completely denied the ability to review or challenge the evidence against her and preventing the hearing examiner from having any opportunity to judge the evidence except through the "prism provided by the Agency."

Holding that A.Y. was entitled to far more protections than she received, our Supreme Court enunciated the following guidelines to be employed with regard to the use of child hearsay in expunction proceedings:

1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. §5986,[5] and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

2. Hearsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

a) the statement was accurately recorded by audio or video equipment;

b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

*Id.* at 1148.

Although Ott, as a "professional charged with investigating incidents of child abuse," was permitted to testify to the statements made to him by M.K., his testimony was only admissible to the extent that it complied with the statutory requirements set forth in Section 5986 of the Judicial Code, 42 Pa.C.S. §5986. Under that section, a child's hearsay statements are admissible through the testimony of certain other individuals, including the child's family or a "professional charged with investigating incidents of child abuse" *if* the hearing examiner finds that "the time, content and circumstances of this statement provide sufficient indicia of reliability." Here, however, the Agency did not establish nor did the hearing examiner make such a finding. Moreover, Ott's testimony did not comport with *A.Y.* because M.K.'s statements were not recorded by audio or video equipment. Just as in *A.Y.,* to allow this hearsay testimony of Ott would permit

---

5. Section 5986 of the Judicial Code, 42 Pa.C.S. §5986, has since been amended. Act of February 21, 1986, P.L. 14, *as amended by* the Act of December 18, 1996, effective in 60 days. Even though J.K. contends that because the expungement hearing was held *after* the effective date of the amendments to the Act, the historical and statutory notes following the amended version states that it is to apply only "to actions commenced on or after the effective date of the act." Because J.K. requested expungement prior to the amendment of the Act, this action had been commenced prior to that amendment and the former version of 42 Pa.C.S. §5986, the version set forth *supra,* governed.

the Agency to rely solely on its own employee's recitation of what M.K. had stated without the safeguards imposed by our Supreme Court in *A.Y.* Because Ott's testimony was hearsay and because the hearing examiner made no findings as to the reliability of the statements testified to by him, his testimony is inadmissible.

### B.

 Even if Ott's testimony is inadmissible hearsay, the Agency contends that M.K.'s prior testimony, taken a year earlier at her parents' custody proceeding, constitutes substantial evidence to support the denial of J.K.'s expungement request because it is admissible as an exception to hearsay under Section 5934 of the Judicial Code, 42 Pa.C.S. §5934.[6] Section 5934 of the Judicial Code requires that the prior testimony sought to be introduced must be from a witness who is "unavailable." When, however, the Agency proffered the transcript of M.K.'s prior testimony, it did not contend that it should be admissible because of her "unavailability." The hearing examiner allowed it by merely stating that M.K. would not be at the hearing because she was not required to be.[7] Because there was no showing of M.K.'s "unavailability" at the time of the hearing, the hearing examiner improperly admitted her prior recorded testimony as an exception to hearsay. *See Pennsylvania State Police v. Unemployment Compensation Board of Review*, 135 Pa.Cmwlth. 71, 578 A.2d 1360 (Pa. Cmwlth.1990) (where state police made no assertion that witnesses were unavailable or even subpoenaed, prior recorded testimony of those persons was not admissible pursuant to 42 Pa.C.S. §5934); see *also Turzai v. Unemployment Compensation Board of Review*, 102 Pa.Cmwlth. 645, 519 A.2d 567 (Pa. Cmwlth.1986).[8]

### C.

 Finally, the Department contends that substantial evidence exists that M.K. was sexually abused by J.K. based on the medical records from the Meadows and the report of Dr. Bonsall. The Department contends that these medical records were properly admitted by the hearing examiner pursuant to the "Uniform Business Records Act" found at Section 6108 of the Judicial Code, 42 Pa.C.S. §6108, which provides that:

> [a] record of an act, condition or event shall, insofar as relevant, be competent evidence *if the custodian or other qualified witness testifies to its identity and the mode of its preparation* and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

---

**6.** Section 5934 of the Judicial Code, 42 Pa.C.S. §5934, provides:
 Whenever any person has been examined as a witness in any civil matter before any tribunal of this Commonwealth or conducted by virtue of its order or direction, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason, and if the party against whom notes of the testimony of such witness are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may be afterwards formed between the same parties and involving the same subject matter as that upon which such witness was so examined. For the purpose of contradicting a witness, the testimony given by him in another or in a former proceeding may be orally proved.

**7.** Even though no proffer was made as to M.K.'s unavailability, the Agency argues that J.K. made no request for M.K. to be at the hearing. However, this argument ignores that in child abuse expungement proceedings, the Agency, not the alleged abuser, bears the burden of proof. *See* Section 6341(c) of CPSL, 23 Pa.C.S. §6341(c); *A.P. v. Department of Public Welfare*, 696 A.2d 912 (Pa.Cmwlth.1997).

**8.** *But see Flores v. Unemployment Compensation Board of Review*, 686 A.2d 66 (Pa.Cmwlth.1996) (claimants' reliance upon 42 Pa.C.S. §5934 is misplaced insofar as administrative proceedings are not governed by technical rules of evidence). However, the Department does not contend that Section 5934 is inapplicable, but to the contrary relies on it, and in child abuse expungement hearings, other evidentiary sections of the Judicial Code are routinely relied upon, i.e., Section 5986, 42 Pa.C.S. §5986.

However, even if this exception applied to these records, it has not been met here because the custodian or other qualified witness did not properly authenticate them as to their identity or mode of preparation. *Sammons v. Civil Service Commission of the City of Philadelphia,* 673 A.2d 998 (Pa. Cmwlth.1996), *petition for allowance of appeal granted,* 546 Pa. 651, 683 A.2d 887 (1996).[9] As such, these records do not constitute substantial evidence to support the Department's denial of J.K.'s expungement request.

Because there exists no non-hearsay evidence to corroborate Ott's hearsay testimony, the Department failed to sustain its burden of proof by producing *any* substantial evidence. Accordingly, the decision of the Department is reversed and the case remanded to the Department to grant J.K.'s expunction request.

## ORDER

AND NOW, this 21st day of October, 1998, the decision and order of the Commonwealth of Pennsylvania, Department of Public Welfare, dated February 13, 1998, No. 21–96–351, is reversed and the case remanded to the Department of Public Welfare to enter an order consistent with this opinion.

Jurisdiction relinquished.

---

**9.** Confusing the business records exception with what is commonly referred to as the "medical treatment" exception, the Department also contends that the records constitute an exception to hearsay and are admissible because they show the facts of hospitalization, the treatment prescribed and symptoms of M.K. *B.E. v. Department of Public Welfare, supra.* However, only statements given to a doctor that were necessary for proper diagnosis and treatment of the injury and referred-to symptoms are admissible. *Commonwealth v. Smith,* 545 Pa. 487, 681 A.2d 1288 (1996). Just because M.K. was undergoing psychiatric treatment does not make her hearsay statements that she was sexually abused by J.K. admissible. In *Smith,* our Supreme Court specifically rejected an argument that everything said by a patient in the context of being questioned for the purposes of psychiatric treatment and diagnoses should be admissible under the medical treatment exception because this would destroy the "pertinent to medical treatment" requirement and would essentially impose no limits upon the medical treatment exception.