Adewale SULE, Petitioner

v.

**PHILADELPHIA PARKING
AUTHORITY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 10, 2011.
Decided Aug. 11, 2011.

Mark S. Kirby, Philadelphia, for petitioner.

Alan C. Kohler, Harrisburg, for respondent.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Adewale A. Sule petitions for review of an adjudication of the Philadelphia Parking Authority [1] imposing a $500 fine for his alleged violation of an executive order of the Authority, which provides that a taxicab driver may not prevent a passenger from using a credit card. Because the Hearing Officer's factual findings were based solely on uncorroborated hearsay

---

1. The Authority is a unique agency that functions as a local agency with respect to parking matters, but as a Commonwealth agency in matters involving taxicabs. *Blount v. Philadelphia Parking Authority*, 600 Pa. 277, 289, 965 A.2d 226, 234 (2009).

and, therefore, not supported by substantial evidence, we reverse the Authority's order.

On September 15, 2009, Sule, a certified taxicab driver, was driving Medallion taxicab number P–1096 in the City of Philadelphia. At approximately 12:30 p.m., Sule picked up Lori Hedrick and took her to the Hilton Hotel on City Avenue. Hedrick paid her fare using a credit card. Later that afternoon, Hedrick called the Authority and complained that Sule had attempted to dissuade her from using a credit card. Hedrick's complaint was assigned to Inspector David Rotan for further investigation.

Rotan spoke to both Hedrick and Sule on the day of the incident. After speaking with Hedrick over the phone, Rotan asked her to provide a written statement regarding her allegations, which she did one week later. Rotan met with Sule and obtained his account of the incident. Based upon his investigation, Rotan determined that Sule had attempted to prevent Hedrick from using a credit card to pay her fare. On September 16, 2009, the Authority issued a citation charging Sule with inhibiting a passenger's use of a credit card in violation of the Authority's Executive Order 07–0002.[2]

Sule appealed the citation and a hearing was held on December 10, 2009. Sule appeared *pro se*. Rotan, the Authority's only witness, testified about his investigation. He spoke first with Hedrick who told him that when she tried to pay for her ride with a credit card, Sule tried to get her to pay with cash and only allowed her to use a credit card when she said she had no cash. Rotan then read into evidence a written statement submitted by Hedrick by e-mail on September 22, 2009. In that statement, Hedrick recounted that when she told Sule she was going to pay with a credit card, he asked her to pay in cash. When she refused, he claimed that his credit card machine did not work and she would have to pay in cash. She again refused, at which point Sule told her if she paid with a credit card he would not actually receive the funds for a week. Only after Hedrick told Sule she had no cash did he activate the credit card machine. Sule did not object to Rotan reading Hedrick's statement into evidence.

Rotan then testified about his conversation with Sule on the day of the incident. Sule informed Rotan that there was never any dispute regarding how Hedrick would pay her fare. Rotan recalled Sule telling him that he believed Hedrick was going to pay in cash, prompting Sule to shut off his meter.

Rotan also testified regarding Executive Order 07–0002 and Authority Board Order 08–0005; copies of both orders were introduced into evidence. First, Rotan noted that Executive Order 07–0002 requires drivers not to "inhibit, prevent, or refuse the use of a credit card." He then explained that Authority Board Order 08–0005 re-designated that violation to be a Class A violation, establishing a $500 fine for a first offense.[3] Rotan explained that

2. Executive Order 07–0002 states, in relevant part:

> No Medallion Taxicab Driver ... may in any way inhibit, prevent, or refuse the use of a Credit Card by any passenger ... in a Medallion taxicab (including, but not limited to, through means of damaging or altering the equipment and the posting of signs

refusing or discouraging Credit Card acceptance).
Reproduced Record at 33. (R.R. ——).

3. Authority Board Order 08–0005 states, in relevant part, that

> despite protracted and repeated training and education ... wide spread refusals to accept payment by credit card persist.

even though Sule eventually accepted Hedrick's credit card, he cited Sule because he had initially inhibited the use of a credit card.

Sule testified on his own behalf. His primary defense to the citation was, simply, that he accepted Hedrick's credit card payment. Sule explained that he asked Hedrick how she was going to pay because it affected how he operated the meter. Sule opined that Hedrick did not understand him because of his accent.

On cross-examination, Sule acknowledged that at one point Hedrick tried to give him her credit card and he told her "no." He explained that he said "no" because he could not use her card; the card reader was not located in the front of the cab, where the meter is located, but in the passenger compartment of the cab. Accordingly, Hedrick had to swipe the card. Sule recalled that when Hedrick first tried to use her card the transaction did not process, so he reset the machine. On her second attempt, the transaction processed successfully.

The Hearing Officer reviewed the evidence and concluded that Sule had violated Executive Order 07–0002. The Hearing Officer credited Rotan's testimony and Hedrick's e-mailed written statement to find that Sule had inhibited Hedrick's use

of a credit card to pay her fare. Recognizing a potential hearsay issue with Hedrick's written out-of-court statement, the Hearing Officer explained:

> Inspector Rotan's testimony and his conclusions from the investigation he conducted are credible, logical and certainly establish that the Authority has met its burden of proof by the clear precise statement [of Hedrick], which, by strict application of legal [principles] might be considered hearsay, but even introduced by letter, bears a ring of truth that is plausible and far more convincing than [Sule's] long diatribe offered to convince the fact finder that the occurrence never took place.

Hearing Officer Adjudication at 3–4. The Hearing Officer imposed a $500 fine pursuant to Authority Board Order 08–0005. Sule now petitions for this Court's review.[4]

On appeal, Sule raises two issues for our review. First, he contends that the Hearing Officer erred by relying solely on hearsay evidence. Second, he argues that the Authority's Executive Order, 07–0002, under which he was cited, is an invalid and unenforceable regulation.

Sule first argues that the Hearing Officer erred by upholding the citation based solely on hearsay evidence. Specifically, he contends the Authority's only evidence

---

Almost half of the 202 citizen complaints ... this year have related to the refusal of taxicab drivers to accept credit card payments.... The existing penalties applicable to these violations have proven insufficient; therefore, the Board orders that the three violations in the Penalty Order titled:
  1. Inhibit, prevent, refuse use of Credit Card;
  2. Use of unauthorized Credit Card processing system; and
  3. Refuse service based on intended Credit Card use
be re-designated "Class A" violations and that the penalty applicable to each violation be $500.00 for a first offense....

R.R. 35.

4. Under the appellate standard of review pertaining to administrative agency adjudications, we must affirm the adjudication unless it violates the constitutional rights of the appellant, or is not in accordance with law, or the statutory provisions controlling practice and procedure of Commonwealth agencies have been violated in the proceedings before the agency, or any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

was Hedrick's uncorroborated, out-of-court written statement regarding the alleged dispute. Hedrick neither appeared at the hearing nor testified by telephone to corroborate her e-mail statement. Sule argues that Rotan's testimony about Hedrick's hearsay statements to him after the incident is also hearsay. Sule asks this Court to vacate the Board's order and, additionally, enter an order prohibiting the Authority's hearing officers from treating (1) hearsay testimony of Authority inspectors and (2) unsworn out-of-court statements by complaining passengers as probative evidence in future hearings.

▉ As a general rule, the Pennsylvania Rules of Evidence are not applicable to hearings conducted before Commonwealth agencies. 2 Pa.C.S. § 505.[5] Nevertheless, it is well-settled that hearsay evidence, properly objected to, is not competent evidence to support a determination of an agency. *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 610, n. 8 (Pa.Cmwlth.2011). Under the so-called *Walker* rule, however, if hearsay evidence is admitted without objection, it will be given its natural probative effect and may support a finding by the agency, *if it is corroborated by any competent evidence in the record. Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366, 370 (1976) (emphasis added). One example of

"competent evidence" that would corroborate hearsay evidence are admissions of a party. *Chapman*, 20 A.3d at 610, n. 8; *see also* PA. R.E. 803(25).[6]

Sule contends that Hedrick's out-of-court written statement and Rotan's testimony about what Hedrick said to him are hearsay. We agree that these items of evidence are classic examples of hearsay. However, both were admitted into the record without objection and, consequently, could support the Hearing Officer's findings *if they were corroborated by any competent evidence in the record. Walker*, 367 A.2d at 370 (emphasis added). Therefore, we must determine whether the Authority's hearsay evidence is corroborated by other competent evidence of record.

▉ A review of Sule's testimony reveals that he admitted only that a dispute arose after Hedrick misunderstood his inquiry regarding how she was going to pay. First, she tried to have Sule swipe her credit card, which he could not do because the machine was in the passenger compartment. This was followed by the credit card machine's failure to process the first transaction. Sule made no admissions that corroborate Hedrick's claim that he either refused or inhibited her use of a credit card. Furthermore, the Authority could not use Rotan's hearsay testimony about what Hedrick said to him to corroborate

5. It states, in relevant part, as follows:
    Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received.
    2 Pa.C.S. § 505.

6. It states, in relevant part, as follows:
    The following statements ... are not excluded by the hearsay rule, even though the declarant is available as a witness:
    \* \* \*
    (25) Admission by party-opponent. The statement is offered against a party and is

... the party's own statement in either an individual or a representative capacity ...

PA. R.E. 803(25) (emphasis in original).

Hedrick's written statement. Hearsay cannot corroborate hearsay. *See J.K. v. Department of Public Welfare*, 721 A.2d 1127, 1133 (Pa.Cmwlth.1998) (noting substantial evidence did not exist because there was no non-hearsay evidence to corroborate hearsay testimony); *Walker*, 367 A.2d at 370 (requiring hearsay to be corroborated by competent evidence in the record). If the Authority wished to base its case solely upon Hedrick's written statement and her account of the incident, then it should have either arranged for her to be present at the hearing or to testify by phone. In short, the Hearing Officer erred by basing his factual findings solely upon Hedrick's uncorroborated, out-of-court statement.

In his second issue, Sule argues that the Authority's Executive Order 07–0002 and Board Order 08–0005 are invalid and unenforceable. We decline to reach the merits of this issue in light of our holding on Sule's first issue. However, we note our doubt that the orders, under which the Authority proceeded against Sule, are enforceable.

In *Germantown Cab Co. v. Philadelphia Parking Authority*, 993 A.2d 933 (Pa.Cmwlth.2010), *petition for allowance of appeal granted*, —— Pa. ——, 14 A.3d 821 (2011), this Court reiterated that the Authority must comply with the Commonwealth Documents Law [7] and that any of its regulations not promulgated in accordance with the Law are invalid. The Authority cannot circumvent the rulemaking procedures in the Commonwealth Documents Law by promulgating a quasi-legislative regulation affecting the entire taxicab industry simply by labeling that regulation an "order." The Authority is statutorily authorized to issue orders,[8] but such orders are meant to apply to a specific entity or individual, not to the industry as a whole. *See Commonwealth ex rel. Tarner v. Bitner*, 294 Pa. 549, 555, 144 A. 733, 735 (1929) (noting an order provides for the disposition of a particular piece of business). *Cf.* Section 102 of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1102 (defining "regulation" as any rule or regulation promulgated under statutory authority in the administration of a statute administered by the agency).

For the reasons set forth above, we reverse the Authority's order.[9]

## ORDER

AND NOW, this 11th day of August, 2011, the order of the Philadelphia Parking Authority, dated February 22, 2010, in the

---

7. Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102–1602, and 45 Pa.C.S. §§ 501–907, which, collectively, are known as the "Commonwealth Documents Law." This was the official short title of the 1968 enactment. *See* Section 101 of the Act of July 31, 1968, P.L. 769.

8. For example, the Authority is authorized to establish orders or regulations which designate additional requirements governing the certification of drivers and the operation of taxicabs or limousines by drivers, including, but not limited to, dress codes for drivers.

53 Pa.C.S. § 5706. A cab driver that later violates an order issued to him may be sanctioned. *See* 53 Pa.C.S. § 5725 (regarding civil penalties for violation of Authority orders).

9. Sule also asks this Court to enter an order prohibiting the Authority's hearing officers from accepting as substantive evidence (1) hearsay testimony of Authority inspectors and (2) unsworn out-of-court statements by complaining passengers. Sule effectively requests an injunction, which has not been requested and is unnecessary. This opinion and order constitute binding precedent on the use of hearsay in Authority proceedings.

above-captioned matter is hereby RE-VERSED.