**Geraldine OLIVER**

v.

**TROPIANO TRANSPORTATION, INC. and Philadelphia Parking Authority Appeal of: Philadelphia Parking Authority.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2013.
Decided Nov. 8, 2013.

Dennis G. Weldon, Jr., Philadelphia, for appellant.

Moira L. Hahn, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

The Philadelphia Parking Authority (Authority) appeals from the decision of the Court of Common Pleas of Philadelphia County (trial court) finding the Authority liable for injuries sustained by Geraldine Oliver (Oliver) pursuant to the real estate exception to sovereign immunity, 42 Pa. C.S. § 8522(b)(4).[1] For the reasons that follow, we reverse the trial court.

1. Section 8522 of the act commonly known as the Sovereign Immunity Act, 42 Pa.C.S.

On March 20, 2009, Oliver was injured in an Authority parking garage located at 10th and Ludlow Streets in the City of Philadelphia (City). Oliver parked her vehicle on the garage's third level. When she returned to the garage, Oliver boarded a shuttle van which transported her to her vehicle because the garage's elevator was broken. Upon exiting the shuttle, Oliver sustained fractures to her right foot.

Oliver filed a complaint in the trial court against the Authority and Tropiano Transportation, Inc.; Tropiano Transportation Service, Inc.; Tropiano Bus Company, LLC; and Tropiano Tours, Inc. (collectively, Tropiano). The complaint alleged, *inter alia*, that the Authority contracted with Tropiano to provide shuttle service for its garage customers to and from the upper levels of its garage, and that the negligence of the Authority and Tropiano caused Oliver's injuries. The Authority filed an Answer, New Matter and Cross Claim, in which it denied the allegations in the complaint; raised numerous affirmative defenses, including governmental[2] and sovereign immunity, and asserted that Tropiano was solely responsible for Oliver's injuries.

The Authority then filed a Motion for Summary Judgment arguing that it is a local agency immune from suit under the Tort Claims Act; that Oliver failed to prove that the vehicle liability or real property exception to governmental immunity applied;[3] and that Oliver cannot recover

§ 8522, relating to exceptions to sovereign immunity, provides, in relevant part:

> **(b) Acts which may impose liability.**-The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> \* \* \*
>
> **(4) Commonwealth real estate, highways and sidewalks.**-A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, lease-holds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

2. Section 8541 of the Act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8541, provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

3. Section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b), provides, in relevant part:

> **(b) Acts which may impose liability.**-The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> (1) *Vehicle Liability.*-The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.
>
> \* \* \*
>
> (3) *Real Property.*-The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:
>
> (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
>
> (ii) facilities of steam, sewer, water gas and electric systems owned by the local agency and located within rights-of-way;
>
> (iii) streets; or

damages for pain and suffering because she did not sustain "permanent loss of bodily function, permanent disfigurement or permanent dismemberment" as required by 42 Pa.C.S. § 8553(c)(2)(ii).[4] The trial court denied the Authority's Motion for Summary Judgment and a non-jury trial was held.

At trial, Oliver testified that when she returned to the parking garage on the date of the accident, she entered a van with the word "Tropiano" written on the side, which was to transport her to her vehicle on the third level. She stated that the van's driver stopped at an inclined portion of the ramp and did not open the door for her or assist her in exiting the vehicle. She testified that when she stepped out of the van, her foot went into a groove in the ramp, causing her injuries. She acknowledged that she misjudged the distance from the van to the concrete surface when she exited the van. Oliver also provided testimony about the treatment she received and her subsequent recovery from her injuries. She stated that when she returned to work in June 2009, she was able to resume all of her previous work duties and normal life activities. (January 28, 2013 Trial Transcript at 25).

Salvatore Lancelotti (Lancelotti), a Site Coordinator/Manager for the Authority, testified by deposition that both of the garage's elevators were out of service during the spring of 2009 and that during that time, the Authority provided shuttle service for customers to get to and from their vehicles. He stated that the Authority used an Authority van for the shuttle service. He further testified that he was the person in charge of the shuttle van drivers during that period, and that he instructed them to "make sure no one gets off on the ramp." *Id.* at 40. He explained that the shuttle drivers were supposed to stop the van, get out, come around to the side door and open it for customers when dropping them off.[5]

Anthony Dintino (Dintino), a Parking Enforcement Officer for the Authority, testified that he drove a shuttle van at the garage in the spring of 2009, and was the only person operating a van on the morning of March 20, 2009. He explained that he let passengers out of his van on a flat surface of the garage's third floor and would have no reason to let anyone off on a sloped portion of the garage. He further testified that he never saw a Tropiano van at the garage.

■■ The trial court found in favor of Tropiano but against the Authority in the amount of $15,000. In its subsequent Opinion, the trial court explained that it found that Tropiano had no presence on the property; the shuttle van was owned and operated by the Authority; and the driver's action of letting Oliver off at a point of incline in the garage was in violation of the Authority's directives. Relying on *Blount v. Philadelphia Parking Au-*

---

(iv) sidewalks.

4. That section, relating to limitations on damages, provides, in relevant part:

 **(c) Types of losses recognized.**-Damages shall be recoverable only for:

 \* \* \*

 (2) Pain and suffering in the following instances:

 \* \* \*

 (ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

5. The Authority objected to the introduction of Lancelotti's deposition testimony, arguing that it was irrelevant because Oliver did not plead that the Authority was operating the vehicle in her complaint. However, the trial court denied the objection.

*thority,* 600 Pa. 277, 965 A.2d 226 (2009), the trial court held that the Authority is a Commonwealth agency and, therefore, the case is governed by the real estate exception to sovereign immunity. The trial court explained that although the ramp itself was not defective, it nonetheless constituted a dangerous condition of the real estate because it played a significant role in causing Oliver's injuries. Finding that Oliver lost approximately three months' work but did not suffer permanent loss of bodily function as a result of her injuries, the trial court awarded Oliver a gross sum of $30,000, reduced by 50% due to her contributory negligence of misjudging the distance to the ground when exiting the van. This appeal by the Authority followed.[6]

On appeal, the Authority contends that for purposes of tort immunity, it is a local agency, not a Commonwealth agency, and because Oliver did not prove a permanent loss of bodily function, she was barred from recovering damages for pain and suffering by 42 Pa.C.S. § 8553(2)(ii). Moreover, the Authority argues that Oliver cannot recover damages pursuant to the real property exception to governmental immunity because the real property itself was not defective. Alternatively, the Authority contends that even if the trial court was correct in holding that the Authority is a Commonwealth agency, Oliver still could not recover under the real estate exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(4), because there was no "dangerous condition of the property" established.

The issue of whether the Authority is governed by the Sovereign Immunity Act or Tort Claims Act is important because of significant differences between governmental and sovereign immunity provisions. A plaintiff may or may not be able to recover, depending on whether a governmental body is determined to be a Commonwealth party or a local agency. For example, there is an exception to immunity for medical professional liability for a Commonwealth party but not for a local agency. When a plaintiff is injured as a result of negligent medical care, he or she can recover if the negligent treatment was rendered by the Commonwealth party, but not if the same negligent care was rendered by a local agency. Not only is that distinction important as to whether a plaintiff can recover, but how much one can recover and the limitation on the amount and the calculation is significantly different for a Commonwealth party than for a local agency.

More pertinent here, the real estate exception to sovereign immunity waives immunity when there is a "dangerous condition" of the real estate, 42 Pa.C.S. § 8522(b)(4), while the real property exception for local agencies waives immunity instead for acts arising out of "[t]he care, custody or control of real property in the possession of the local agency." 42 Pa. C.S. § 8542(b)(3). Moreover, unlike under sovereign immunity, to recover against a local agency, the plaintiff must have a "permanent loss of a bodily function, permanent disfigurement or permanent dismemberment," which, admittedly, Oliver does not have.

Whether sovereign immunity or governmental immunity applies depends on whether the governmental entity is a

---

**6.** In reviewing a verdict of a judge without a jury the appellate court must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed an error of law. *Selfspot, Inc. v. Butler County Family YMCA,* 987 A.2d 206, 216 n. 5 (Pa.Cmwlth.2010). The findings of the trial judge must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion. *Id.*

"Commonwealth party" or a "local agency." The Sovereign Immunity Act bars claims against a "Commonwealth party." 42 Pa.C.S. § 8522. Section 8501 of the Judicial Code defines a "Commonwealth party" as "[a] Commonwealth agency and any employee thereof ..." 42 Pa.C.S. § 8501. Under Section 102 of the Judicial Code, a "Commonwealth agency" is defined as "[a]ny executive or independent agency." 42 Pa.C.S. § 102. Both executive and independent agencies are defined, in relevant part, as boards, commissions, authorities and other officers and agencies of the Commonwealth government. *Id.* "Commonwealth government" is, in turn, defined as encompassing, *inter alia,* "the departments, boards, commissions, authorities and officers and agencies of the Commonwealth, but the term does not include any political subdivision, municipal or other local authority ..." *Id.*[7] "Local authority" is defined in the Statutory Construction Act, which provides, in relevant part:

The following words and phrases, when used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, shall have the meanings given to them in this section:

\* \* \*

 "Local Authority." When used in any statute finally enacted on or after January 1, 1975, a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute.

1 Pa.C.S. § 1991. Because the Judicial Code was enacted after January 1, 1975, any authority that is created by a political subdivision is not an "agency of the Commonwealth" and, thus, not a part of the "Commonwealth government." Because the City created the Authority, it is, by definition, a "local authority" and not part of the "Commonwealth government." *City of Philadelphia v. Philadelphia Parking Authority,* 837 A.2d 1267, 1273 (Pa. Cmwlth.2003).

*Blount,* the case relied upon by the trial court for the proposition that the Authority is a Commonwealth agency, actually supports the conclusion that the Authority is a local agency in the instant matter. In *Blount,* various taxicab drivers and companies filed a petition for review in this Court's original jurisdiction challenging regulations issued by the Authority.[8] We held that because the Authority is a local agency and not a Commonwealth agency, we lacked original jurisdiction[9] to hear a challenge to its regulations and, accordingly, transferred the case to the Court of Common Pleas. The Supreme Court reversed, holding that the Authority "is a Commonwealth agency for the purposes of regulating taxicabs" and, therefore, "[t]he Commonwealth Court has original jurisdic-

---

7. Correspondingly, the Tort Claims Act provides that no "**no local agency** shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541 (emphasis added). "Local agency" is defined as "[a] government unit **other than the Commonwealth government.**" 42 Pa.C.S. § 8501 (emphasis added).

8. In 2001, the General Assembly re-codified and significantly amended the 1947 Parking Authorities Law, Act of June 5, 1947, PL. 458, formerly 53 P.S. §§ 341–356, repealed by the Act of June 19, 2001, PL. 287, *as amended,* 53 Pa.C.S. §§ 5501–5517. *Blount,* 600 Pa. at 279, 965 A.2d at 228. The new law established different powers and organizational standards for the Authority as compared to parking authorities of other municipalities, including the control of taxicab and limousine operations in and around Philadelphia. *Id.;* 53 Pa.C.S. § 5505(d)(23), (24).

9. In Pennsylvania, the Commonwealth Court has original jurisdiction over civil actions against the "Commonwealth government." 42 Pa.C.S. § 761(a)(1).

tion over actions arising under the Taxicab and Limousine Chapter of the Pennsylvania Consolidated Statutes Title 53, 53 Pa. C.S. § 5701–5745 ..." *Blount,* 600 Pa. at 289, 965 A.2d at 234. In its analysis, the Supreme Court emphasized that there are different factors for determining the status of an agency for jurisdictional purposes than for immunity purposes. The Court explained:

> For jurisdictional purposes, "the pivotal factors ... are whether the entity operates on a statewide basis and is controlled by the state." [*James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority,* 579 Pa. 26, 855 A.2d 669, 678 (2004).] [9] ... On the other hand, **for the purposes of determining immunity, the important factor was whether "the entity was created by the state to perform a state function so that a judgment against it would, in essence, injure the state."** *Gory,* [579 Pa. at 39], 855 A.2d at 677.

*Blount,* 600 Pa. at 284, 965 A.2d at 231 (emphasis added). The Supreme Court concluded that the Authority is a Commonwealth agency for jurisdictional purposes with respect to its regulation of taxicabs because the Authority operates statewide and is controlled by the Commonwealth.[10] However, the Court noted, "the [Authority] ... has some local functions, **such as the management of on and off-street parking in Philadelphia** ... Those purely local functions are not at issue in this case. Disputes arising out of these local operations are properly relegated to the original jurisdiction of the [trial court]." *Id.* at

283, 965 A.2d at 230 n. 8 (emphasis added). This Court has since reiterated this distinction between the Authority's parking functions and its regulation of the taxicab industry, noting that "[t]he Authority is a unique agency that functions as a local agency with respect to parking matters, but as a Commonwealth agency in matters involving taxicabs." *Sule v. Philadelphia Parking Authority,* 26 A.3d 1240, 1241 n. 1 (Pa.Cmwlth.2011).

Based on the foregoing, the Authority is clearly a local agency in the context of this case. As stated in *Gory* and *Blount,* the relevant inquiry in determining the Authority's status for purposes of tort immunity is whether "the entity was created by the state to perform a state function." As discussed above, the Authority's regulation of parking is a purely local function. Therefore, the trial court erred in holding that the Authority is a Commonwealth agency with respect to the instant matter.

■ Because the Authority is a local agency, it is subject to the limitations on damages set forth in 42 Pa.C.S. § 8553. Pursuant to that section, Oliver could only recover damages for pain and suffering if she had "permanent loss of a bodily function, permanent disfigurement or permanent dismemberment." 42 Pa.C.S. § 8553(c)(2)(ii). Because Oliver admitted at trial that she had fully recovered from her injuries, she is barred from recovering damages for pain and suffering.

■ Moreover, Oliver has not made out a claim under the real property excep-

---

**10.** The Court concluded that the Authority operates statewide with respect to taxicab regulation because taxicabs must obtain certificates of public convenience from the Authority if they operate from the City to any point in the Commonwealth, and because the Authority shares responsibility for taxicab regulation with the Public Utility Commission (PUC) and this Court has original jurisdiction

over decisions relating to PUC-licensed taxicabs. *See Blount,* 600 Pa. at 285–87, 965 A.2d at 232–33. The Court's conclusion that the Authority is controlled by the Commonwealth was based on the fact that the Authority's Governing Board is appointed by the Governor and that the General Assembly oversees the Authority's budget. *See id.* at 287–88, 965 A.2d at 233–34.

tion to governmental immunity at 42 Pa. C.S. § 8542(b)(3). To maintain a negligence claim under the real property exception, the plaintiff must prove that his or her injury resulted from a dangerous condition arising from the local agency's care, custody or control of the real property. *Tackett v. Pine Richland School District,* 793 A.2d 1022, 1023 (Pa.Cmwlth.2002); *Wilson v. Norristown Area School District,* 783 A.2d 871 (Pa.Cmwlth.2001). In this case, it was not the ramp itself, which the trial court found was not defective, but the purported negligence of the van operator in leaving Oliver off on the ramp that caused Oliver's injuries, making the real property exception to governmental immunity inapplicable.[11]

Accordingly, the order of the trial court is reversed.

## ORDER

AND NOW, this *8th* day of *November,* 2013, the decision of the Court of Common Pleas of Philadelphia County, at No. 01715, March Term, 2011, is reversed.

**11.** The Authority also contends that the trial court abused its discretion in finding that the Authority negligently operated the shuttle van because Oliver only alleged that Tropiano negligently operated the van and maintained throughout the entire litigation that she was in a Tropiano van. However, given our holding, we need not address that argument.