**BUCKS COUNTY CHILDREN AND YOUTH SOCIAL SERVICES AGENCY, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 23, 2002.

Decided Oct. 17, 2002.

---

Brad M. Jackman, Doylestown, for petitioner.

Michael S. Goodwin, New Britain, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

The Bucks County Children and Youth Social Services Agency petitions for review of an order of the Department of Public Welfare that adopted, in its entirety, the recommendation of an attorney examiner to sustain the appeal of R.J. and to expunge his name from the ChildLine Registry. We affirm the Department.

M.K.B., now a 19–year–old female, brought allegations of sexual abuse against R.J., the father of her close friend, J.J. and her former softball coach. She alleged that he had repeatedly touched her breasts and genitals over a five-year period prior to her 16th birthday. She claimed that the incidents took place during sleepovers at J.J.'s house, on the softball field and on a trip the team took to Florida. She claimed that her friend had witnessed some of this abuse and that R.J.'s inappropriate behavior had been the subject of a team meeting. CYS caseworker Diane Meyer interviewed M.K.B. and indicated a report of child abuse by R.J. without speaking to him or to any of the individuals whom M.K.B. told her had witnessed the abuse. Ms. Meyer's report was based solely on

the information given to her by M.K.B. Detective Scott Selisker of the Warminster Township Police Department investigated the allegations made by M.K.B. but was unable to verify anything that M.K.B. reported to Ms. Meyer. R.J. then asked that his name be expunged from the Child-Line Registry; CYS refused the request and R.J. appealed to the Department. The attorney examiner who heard the appeal recommended that R.J.'s name be expunged from the Registry and an order was entered to that effect. CYS brought this appeal. R.J. has filed a brief in opposition to the appeal; the Department is not participating.

At the hearing on R.J.'s appeal M.K.B. and the CYS caseworker, Diane Meyer, testified to the alleged abuse by R.J. Ms. Meyer's testimony was hearsay testimony based solely on what M.K.B. had related to her. Their testimony established five specific allegations in addition to the improper touching that M.K.B. alleged had occurred over the years. Those allegations were:

1) R.J. pushed her onto her back on a bed in a Florida hotel room and pushed her shirt up during a team trip when she was 15. J.J. was alleged to have witnessed this incident;

2) R.J. entered his daughter's room one night during a sleepover and climbed onto M.K.B. J.J. was alleged to have witnessed this incident;

3) M.K.B. alleged that she discussed these incidents with J.J.;

4) M.K.B. alleged that R.J. had had improper contact with another member of the team, K.V.; and

5) M.K.B. alleged that a team meeting was held in June 1998 to discuss the alleged improper contact between R.J. and K.V.

M.K.B.'s testimony at the hearing is couched in very general terms. She admitted to having poor recall of the specifics of any of the incidents of abuse, did not remember the details of the Florida incident and did not want to discuss it. M.K.B. testified that much of her memory was in the form of flashbacks that had occurred since an automobile accident and that she was being treated by a therapist who specialized in recalled memory. The specifics of her allegations were supplied by Diane Meyer's hearsay testimony.

Detective Selisker testified that he interviewed M.K.B. and took statements from her and the individuals that M.K.B. said had witnessed the incidents. He testified that he was unable to corroborate any of the allegations made by M.K.B. and that her statements made to him two months apart were inconsistent. Detective Selisker testified that R.J. had cooperated fully with his investigation to the extent that he had voluntarily submitted to a polygraph examination. The results of that examination were not revealed at the hearing but the fact that R.J. submitted to the test voluntarily was admitted to demonstrate the extent of R.J.'s cooperation. Detective Selisker testified that no criminal charges had been filed as result of his department's investigation. J.J., M.K.B.'s close friend, flatly refuted M.K.B.'s version of the sleepover incident and testified that she had not witnessed the incident alleged to have taken place in the Florida hotel room. Three members of R.J.'s softball team all denied that R.J.'s sexual conduct was raised at the June, 1998 team meeting. R.J. testified in his own behalf and denied that he had ever acted in an inappropriate manner with M.K.B.

■ The questions we are asked to determine are: 1) whether the attorney examiner erred in finding the M.K.B. had recalled memory where she testified that she recalled incidents of abuse in flashbacks and that a therapist was helping her

in that recall; 2) whether the attorney examiner erred in admitting testimony of the investigating police officer that no criminal charges were brought as a result of his investigation and that he found material inconsistencies in the statements made to him by M.K.B.; and 3) whether the attorney examiner erred in admitting as evidence, for the sole purpose of establishing that R.J. cooperated fully with the police investigation without admitting the result of the test, the simple fact that R.J. had voluntarily submitted to a polygraph examination? [1]

■ Children and Youth Social Services Agency has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate. If CYS fails to sustain that burden, a request for expungement will be granted. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 151 Pa.Cmwlth. 110, 616 A.2d 170 (1992); 23 Pa.C.S. § 6341(c). The attorney examiner is the ultimate finder of fact. *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994). Hearsay testimony in an administrative proceeding to expunge a name is not substantial evidence unless it is corroborated. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995).

■ We are puzzled that CYS complains that the Department erred when it adopted the report of an attorney examiner who found that an alleged child victim had recalled memory of incidents of abuse that occurred through flashbacks triggered by an automobile accident. It was the alleged victim herself who testified that she experienced recalled memory through flashbacks; the attorney examiner simply

found that she had so testified. We are unable to find any merit in CYS' claim that the Department somehow erred in adopting the attorney examiner's report because he found as fact that which is clearly reflected in the alleged victim's testimony in the record.

■ CYS next argues that Detective Selisker's testimony that M.K.B.'s statements were inconsistent should not be admitted because "Detective Selisker demonstrated his lack of competency in investigating child abuse by his lack of recognition as to core and collateral inconsistencies. He lacked proper training to understand what core and collateral inconsistencies are ..." (Petitioner's brief, p. 10). CYS then rests on this bare argument. It does not explain the difference between "core and collateral inconsistencies" or what legal effect this difference might have on its case. We find no merit in CYS argument that the attorney examiner committed any error in considering Detective Selisker's testimony that M.K.B.'s statements to him were inconsistent.

■ We will not discuss the other issues that CYS has placed before us because there is no context in which to discuss them. As the ultimate finder of fact in this case the attorney examiner found that "the testimony of the subject child, as to the allegations of child sexual abuse was unreliable and not credible" (Finding of Fact 66) and that the "The Appellant's testimony was credible" (Finding of Fact 67). Our examination of the record satisfies us completely that he was correct when he concluded: "In summary, there is no corroboration at all of M.K.B.'s allegations of improper touching by R.J. during

---

1. Our standard of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or whether necessary facts are supported by substantial evidence. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995).

the alleged victim's visits to the J. home and every incident advanced to support M.K.B.'s allegations was refuted by the persons concerned." (Attorney Examiner's opinion, p. 15, R.R. 162). We can ignore Diane Meyer's hearsay testimony because it was based solely on M.K.B.'s uncorroborated allegations. Thus, CYS has failed not only to produce substantial evidence of abuse by R.J. as our law requires, it has failed to produce *any evidence at all.* There is not a *scintilla* of evidence in the record of this case to indicate that R.J. ever acted inappropriately with M.K.B. or with any of the apparently hundreds of young girls entrusted to his care as a softball coach over the years. Every single fact established at the hearing serves to directly refute the allegations made by M.K.B. Nothing in the record corroborates a single thing she said about R.J.'s inappropriate conduct.

CYS' complete and utter failure to advance any case at all against R.J. relieves us of the burden of discussing the questions relating to Detective Selisker's testimony *regarding the polygraph* examination or his testimony regarding criminal charges because, even if we were to ignore that evidence, there is still a complete and total lack of *any evidence at all* that R.J. ever acted inappropriately in regard to M.K.B. or any other individual. The questions CYS presents for our review can only be discussed as they apply to substantial evidence. In the complete absence of any evidence they are moot.

Before we close we are constrained to address the conduct of CYS in this matter. CYS clearly abused the authority given to it by our legislature when it caused R.J.'s name to be placed in the ChildLine Registry on the bare, unsubstantiated allegations of an alleged victim without conducting the most rudimentary investigation into the validity of those allegations. It then proceeded to a hearing bringing absolutely no direct evidence to support its allegations and knowing not only that every allegation it would make could not be corroborated but that each would be refuted. Apparently not satisfied with this waste of administrative resources, it chose to waste our resources by placing its empty basket before us and attempting to justify its case on what can only charitably be described as legal argument because there is *not a single reference to statute or case law* in CYS' argument in support of its position.

We conclude that CYS has failed to carry its burden of demonstrating, by substantial evidence, the accuracy of its report of child abuse. Accordingly, we affirm the Department's order adopting the recommendation of the attorney examiner to expunge R.J.'s name from the ChildLine Registry.

### ORDER

AND NOW, this 17th day of October 2002, the order of the Department of Public Welfare adopting the recommendation of the attorney examiner in this case is affirmed.