# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Children and Youth Services      :
for the County of Berks,         :
                    Petitioner   :
                                 :  **CASE SEALED**
          v.                     :  No. 1175 C.D. 2017
                                 :  Argued:  April 12, 2018
Department of Human Services,    :
                    Respondent   :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  May 7, 2018**


Children and Youth Services for the County of Berks (CYS) petitions for review of an order of the Secretary of the Department of Human Services (DHS), dated August 2, 2017.  The Secretary upheld an order of the Bureau of Hearings and Appeals (BHA), which sustained J.K.'s appeal and thereby granted J.K.'s request to expunge from the ChildLine & Abuse Registry (ChildLine)[1] an indicated report of child abuse identifying J.K. as the perpetrator of the abuse.  For the reasons set forth below, we affirm.

---

[1] ChildLine is an organizational unit of DHS that operates a statewide toll-free system for receiving and maintaining reports of suspected child abuse, along with making referrals for investigation.  55 Pa. Code § 3490.4.

On July 1, 2016, following an investigation, CYS filed an indicated report[2] of child abuse against J.K. and placed J.K.'s name into ChildLine. The indicated report related to an allegation that J.K. hit S.Z.-K., his eight-year-old minor child (Child), with a stick on her upper left thigh on May 1, 2016, thereby causing bodily injury. On August 18, 2016, J.K. requested a hearing before BHA to determine whether the indicated report of child abuse should be expunged. Administrative Law Judge Twilah S. Shipley (ALJ) conducted a hearing on November 10, 2016.

At the hearing, CYS presented the testimony of Nicole Robinson, an intake caseworker in CYS's sexual abuse unit with thirteen years of experience with CYS (Caseworker Robinson). (Reproduced Record (R.R.) at 6.) Caseworker Robinson testified that on or about May 1, 2016, CYS received a referral regarding Child, which indicated that J.K. had caused Child to sustain an injury to her leg. (*Id.*) Caseworker Robinson testified further that on May 3, 2016, she visited Child's family home to investigate the allegations of the referral. (*Id.*) At that time, Caseworker Robinson interviewed Child's siblings, Child's mother, M.K., and Child. (*Id.*) Caseworker Robinson explained that Child's siblings informed Caseworker Robinson that their older sister, A.Z.-K., who had retrieved them from the bus stop while Caseworker Robinson was at the home, told them to inform

---

[2] An "indicated report" is defined, in part, as:

[A] report of child abuse made pursuant to this chapter if an investigation by [DHS] or [CYS] determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:

    (i) Available medical evidence.

    (ii) The child protective service investigation.

    (iii) An admission of the acts of abuse by the perpetrator.

Section 6303(a) of the Child Protective Services Law (CPSL), 23 Pa. C.S. § 6303(a).

Caseworker Robinson that "[J.K.] was messing around with [Child], and that's how she received the mark on her leg." (*Id.* at 7.) Caseworker Robinson explained further that while M.K. initially informed Caseworker Robinson that she was not aware that there was a mark on Child's leg, she later indicated that she was aware of the mark, but did not know how it had happened. (*Id.* at 8.)

Caseworker Robinson also testified that Child initially informed Caseworker Robinson that when A.Z.-K. had picked her up from the bus stop, A.Z.-K. "told her just to say that her and [J.K.] were messing around, and that's how she received the bruise." (*Id.*) Child, however, then informed Caseworker Robinson

> that she didn't know why [A.Z.-K.] said that, and that really didn't happen, and that [J.K.] had gotten mad at her because she didn't take the dogs out fast enough. So he got a stick, which she described that it was --- came off the wall, and she hit him --- he hit her with the stick and broke it on her leg.

(*Id.*) During her interview of Child, Caseworker Robinson observed a black and blue bruise on Child's upper left thigh that was the size of a cookie or graham cracker. (*Id.* at 8, 11, 13.) Child informed Caseworker Robinson that her leg hurt when she sat down for a long period of time and when she touched it. (*Id.* at 9, 13.) Child rated her pain at an eight out of ten. (*Id.*) Caseworker Robinson explained that she also noticed redness and swelling on Child's left thigh and that Child was uncomfortable and had difficulty moving her left leg. (*Id.* at 9, 11, 13.) Caseworker Robinson indicated further that Child did not treat with a doctor for her injury. (*Id.* at 12.) Caseworker Robinson stated that she did not know whether Child missed school as a result of the injury or whether her injury affected her daily activities. (*Id.* at 13.) Caseworker Robinson also interviewed J.K. over the phone. (*Id.* at 6.) Caseworker Robinson testified that J.K. initially indicated to Caseworker Robinson that nothing had happened, but then stated "what a terrible child that [Child] was and

3

that [Child] curses at him often, and what would [Caseworker Robinson] do if [she] was in a situation as he was." (*Id.* at 9.)

CYS also presented the testimony of Child. Child testified that when she gets in trouble, J.K. uses his hands to spank her on her butt. (*Id.* at 18-20, 24.) Child testified further that J.K. never spanks her with anything but his hands. (*Id.* at 19-20, 22.) Child stated that she helps take care of her family's ten dogs by feeding them and taking them outside. (*Id.* at 18-20.) Child explained that M.K. and J.K. yell at her and her sisters if they forget to take the dogs outside, but she and her sisters are not punished or grounded. (*Id.* at 20.) Child initially testified that she did not remember how she got the black and blue mark on her leg. (*Id.* at 19.) When questioned by the ALJ, however, Child indicated that her sister was rocking a wooden swing back and forth and the swing hit her leg. (*Id.* at 21.) Child testified further that J.K. did not hit her with a piece of wood. (*Id.* at 21, 23.) Child explained that she informed Caseworker Robinson that J.K. had caused the bruise by hitting her with a piece of wood, because she was mad at D3, J.K.'s sixteen-year-old son, who "did something very wrong." (*Id.* at 21.)

J.K. presented the testimony of K.M., who is M.K.'s sister and J.K.'s sister-in-law. (*Id.* at 28.) K.M. testified that she spoke with Child on the telephone the day after Caseworker Robinson visited Child's family home. (*Id.* at 28-29.) At that time, Child informed K.M. that she got the bruise on her thigh when she and her sister were playing with the swings and her sister's swing hit her in the leg. (*Id.* at 29.) K.M. testified further that she spoke with Child about the incident more than fifteen times and Child consistently indicated to K.M. that the bruise was caused by the swing. (*Id.* at 29-30.) K.M. stated that Child indicated to K.M. that she had informed Caseworker Robinson that J.K. had caused the bruise to her thigh because

4

she was angry at J.K. (*Id.* at 29-30.) Child also informed K.M. that she was angry at J.K. because D3, who had touched her inappropriately, was present in the family home. (*Id.* at 30.) K.M. explained further that while J.K. "looks rough and gruff," he is peaceful and like a big teddy bear. (*Id.* at 31.) K.M. described Child as outgoing, a follower, and "a good kid . . . very opinionated, very vocal . . . twists the truth a lot." (*Id.* at 31-32.)

J.K. also testified on his own behalf. J.K. stated that Child received the bruise on her thigh from the swing set. (*Id.* at 36.) J.K. explained:

> I was watching her. I was underneath the vehicle when they were playing outside, and she did, in fact, get hit by the swing set and came running inside. I was underneath the vehicle. She showed me the mark. And I said, oh, that's going to leave a bruise.

(*Id.*) J.K. explained that the injury involving the swing set happened three weeks before May 1, 2016, the date of the alleged child abuse incident. (*Id.*) J.K. also explained that Child was limping immediately after the swing set incident, but by the end of the night you could not tell that her leg was bothering her anymore. (*Id.* at 37.) J.K. explained further that Child did not see a doctor, receive any pain medication, or miss any school as a result of the injury that she received from the swing. (*Id.*) J.K. testified further that, on May 1, 2016, he gave Child and two of her siblings a "swat"—*i.e.*, open-handed slap on the butt—when they did not listen to M.K.'s and J.K.'s repeated instructions to take the dogs outside. (*Id.* at 36-37.) J.K. stated that he never hit Child with a stick or piece of molding. (*Id.* at 37.) J.K. also stated that he never disciplines or hits any of his children with anything other than his open hand.[3] (*Id.* at 37-38.)

---

[3] J.K. also presented the testimony of W.G., J.K.'s friend and character witness. (R.R. at 34-35.) W.G. indicated that he did not have any personal knowledge of the child abuse allegations other than conversations that he had with J.K. (*Id.* at 35.)

On February 24, 2017, the ALJ issued a recommendation sustaining J.K.'s appeal. In her recommendation, the ALJ made the following relevant factual findings and credibility determinations:

7. [Child] did not receive medical attention for her injury or take any medication.

8. [Child] did not miss any time from school nor were her regular daily activities interrupted as a result of her injury.

. . . .

11. The testimony of [DHS's/CYS's] witnesses [sic], Caseworker Robinson, was credible, candid and consistent and she lacked a personal interest in the outcome of the appeal.

12. The testimony of [Child] was not credible with respect to [DHS's/CYS's] allegations as to how she received an injury to her thigh.

13. The statements of [Child] to Caseworker Robinson on May 3, 2016, two (2) days after the alleged abuse, were more credible than her testimony at the hearing.

14. The testimony of [Child's] maternal aunt and [J.K.'s] sister-in-law, K.M.[,] was credible, candid and consistent; however, she had no personal knowledge of the allegations. K.M. described [Child] as a "good kid" and a "follower" who "twists the truth a lot." On multiple occasions, *about 15 times*, K.M. spoke with [Child] about the allegations and [Child] told her that she injured her thigh when the swing in their backyard hit her leg.

15. The testimony of W.G., [J.K.'s] close friend and character witness, was credible and consistent; however, he had no personal knowledge of the allegations relating to this appeal.

16. The testimony of [J.K.] was not credible with respect to the allegations relating to this appeal. [J.K.] denied hitting [Child] on her leg and claimed

6

that he only spanks [Child] on her buttocks and never used any other objects.

17. [J.K.'s] testimony contradicted Caseworker Robinson's investigation . . . .

18. When Caseworker Robinson investigated the allegations, none of the family members that she interviewed, including [Child], stated to her that [Child] injured her thigh when a swing hit it.

19. The ALJ placed more weight and credence on [Child's] and her family members' statements to Caseworker Robinson in May 2016 during Caseworker Robinson's investigation than their testimonies on November 10, 2016.

(ALJ's Recommended Decision at 5-6 (emphasis in original) (citations omitted).) Based on those factual findings and credibility determinations, the ALJ determined that DHS/CYS failed to prove by substantial evidence that J.K. committed child abuse against Child. (*Id.* at 16.) The ALJ recommended that J.K.'s appeal be sustained and the indicated report of child abuse be expunged from ChildLine. (*Id.*) The ALJ reasoned that "[J.K.'s] actions lacked good, sound judgment and he exhibited poor parenting skills under the circumstances; however, in [her] opinion, the evidence [did] not support a finding of child abuse." (*Id.*)

In reaching her recommendation, the ALJ recognized that "child abuse" is defined by Section 6303(b.1)(1) of the Child Protective Services Law (CPSL), 23 Pa. C.S. § 6303(b.1)(1), as, *inter alia*, "intentionally, knowingly or recklessly . . . [c]ausing bodily injury to a child through any recent act or failure to act."[4] (*Id.* at 7.)

---

[4] Pursuant to Section 6303(a) of the CPSL, 23 Pa. C.S. § 6303(a), the terms "knowingly," "intentionally," and "recklessly" have the same meaning under the CPSL as they do under Section 302 of the Crimes Code, 18 Pa. C.S. § 302. Section 302 of the Crimes Code defines "knowingly," "intentionally," and "recklessly" as follows:

(b) Kinds of culpability defined.—

The ALJ also recognized that "bodily injury" is defined by Section 6303(a) of the CPSL as "[i]mpairment of physical condition or substantial pain." (*Id.*) Recognizing that this is a corporal punishment case, the ALJ then applied the criminal negligence standard and concluded that DHS/CYS failed to prove that J.K.'s actions were criminally negligent or reckless because: (1) "[s]ome reasonable persons in [J.K.'s] position who were angry at their child for failing to do chores or obey them may have used a wooden stick to spank or discipline [Child]" and, therefore, there was not a gross deviation from the standard of care that a reasonable person would observe in J.K.'s situation; and (2) J.K. may not have recognized that

---

(1) A person acts intentionally with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

"a substantial and unjustifiable risk would result from his conduct."[5] (*Id.* at 9, 15.) The ALJ also concluded that Child did not sustain bodily injury as a result of J.K.'s actions because Child was not treated for her injury by a medical provider, was not prescribed or given pain medication, and continued to go about her normal activities. (*Id.* at 15.) BHA adopted the ALJ's recommendation in its entirety, and CYS sought reconsideration of BHA's February 24, 2017 order. The Secretary of DHS granted CYS's request for reconsideration on March 21, 2017, but ultimately upheld BHA's order on August 2, 2017. CYS then petitioned this Court for review.

On appeal,[6] CYS argues that BHA committed an error of law in concluding that CYS failed to present substantial evidence to support the indicated report of child abuse. More specifically, CYS argues that the evidence presented to BHA established that "J.K. intentionally, knowingly, or recklessly struck [Child] with a stick with enough force to cause substantial pain." (CYS's Br. at 14.) CYS argues further that J.K. did not present any evidence to establish "that striking [Child] in the leg with a stick was a reasonable use of force used for supervision, control, or discipline."[7] (CYS's Br. at 19.) In response, J.K. argues that BHA

---

[5] The ALJ went on to conclude that J.K.'s actions were also not intentional or knowing. (ALJ's Recommended Decision at 15-16.) This analysis by the ALJ was unnecessary and improper as any act of corporal punishment is inevitably an intentional and knowing act. *See P.R. v. Dep't of Pub. Welfare*, 801 A.2d 478, 486 (Pa. 2002) ("Corporal punishment at its core embodies intent to inflict pain.").

[6] "This Court's scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence." *E.D. v. Dep't of Pub. Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998).

[7] CYS also argues that whether J.K. struck Child with the stick for disciplinary purposes is irrelevant because J.K. did not raise this issue before BHA. In response, J.K. argues that CYS's argument is misplaced because CYS had the burden of proof and failed to present substantial evidence to support the indicated report of child abuse. We agree. J.K. was not required to raise

9

properly determined that CYS failed to establish that J.K. intentionally, knowingly, or recklessly caused bodily injury to Child. J.K. also argues that BHS properly determined that, assuming J.K. did use a wooden stick to effectuate discipline, "the standard of care utilized by J.K. was not a gross deviation from the standard of care a reasonable person would utilize" under the circumstances.[8] (J.K.'s Br. at 17.)

"[CYS] has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate. If CYS fails to sustain that burden, a request for expungement will be granted." *Bucks Cty. Children & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990, 993 (Pa. Cmwlth. 2002). The substantial evidence standard established by the CPSL[9] differs from the substantial evidence standard typically used in administrative law.[10] Substantial evidence, as defined by the CPSL, is "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa. C.S. § 6303(a). "[I]n determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable and logical inferences that may be drawn from the evidence of record; the weight and credibility to be accorded to the evidence is solely within the province of the . . . fact finder." *S.T. v. Dep't of Pub. Welfare,*

---

any and all potential defenses to CYS's claims against him and, instead, could rely on CYS's inability to meet its burden of proof below. In addition, nothing prevents J.K., as the non-appealing party, from setting forth any and all arguments in support of BHA's decision on appeal.

[8] DHS did not file a brief in this appeal but indicated to this Court that it agreed with J.K.'s position that BHA properly determined that CYS did not establish substantial evidence of child abuse.

[9] 23 Pa. C.S. §§ 6301-6386.

[10] Courts typically define "substantial evidence" as "relevant evidence upon which a reasonable mind could base a conclusion." *See Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986).

*Lackawanna Cty. Office, Children, Youth & Family Servs.*, 681 A.2d 853, 856 (Pa. Cmwlth. 1996) (citing *Bedford Cty. Children & Youth Servs. v. Dep't of Pub. Welfare*, 613 A.2d 48, 50 (Pa. Cmwlth. 1992)), *appeal denied*, 690 A.2d 1165 (Pa. 1997).

Here, the ALJ found that J.K. struck Child with a wooden stick for disciplinary purposes, thereby causing Child to sustain a bruise to her upper left thigh. The ALJ determined, however, that J.K.'s use of corporal punishment did not constitute child abuse, because the record failed to establish that J.K.'s actions were criminally negligent/reckless or that Child sustained bodily injury. As a result, the ALJ concluded that CYS failed to meet its burden to present substantial evidence to support the indicated report of child abuse against J.K. The ALJ did not commit an error of law in reaching this conclusion because, giving J.K. the benefit of all reasonable and logical inferences as we must, a reasonable person could accept the record evidence as adequate to support the ALJ's determination that J.K.'s actions were not criminally negligent/reckless. Although decided under a prior version of the CPSL (which defined "child abuse" using the term "non-accidental" and "serious physical injury" rather than "intentionally, knowingly or recklessly" and "bodily injury"), this Court's prior decision in *F.R. v. Department of Public Welfare*, 4 A.3d 779 (Pa. Cmwlth. 2010), is helpful to our analysis. In *F.R.*, F.R. spanked P.R. on his buttocks with an open hand multiple times to discipline P.R. for throwing away his reading assignment and lying about it. *F.R.*, 4 A.3d at 781. On appeal from the denial of F.R.'s request for expungement of an indicated report of child

abuse, this Court determined that criminal negligence[11] was the proper standard to be applied in corporal punishment cases[12] and concluded:

> The ALJ specifically found that Petitioner's intentional act of spanking caused P.R. to suffer severe pain and a functional impairment based on the bruising P.R. suffered. The ALJ also found that, while F.R. did not act with malicious intent in disciplining P.R., Petitioner "lost control of his emotions" and caused injuries "while disregarding a substantial and unjustifiable risk to P.R." Thus, the ALJ properly applied the criminal negligence standard in this case when he considered the existence of severe pain and functional impairment, which he found were caused by a substantial and unjustifiable risk.

*Id.* at 788 (citations omitted).

In this case, unlike in *F.R.*, there is no evidence in the record to suggest that J.K. was criminally negligent—*i.e.*, that he disregarded a substantial and unjustifiable risk or deviated from a standard of care that a reasonable person would

---

[11] "Criminal negligence" is defined by Section 302(b)(4) of the Crimes Code, 18 Pa. C.S. § 302(b)(4), as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

[12] In *P.R.*, the Pennsylvania Supreme Court balanced the competing objectives of protecting children from abuse and a parent's right to use corporal punishment and adopted a criminal negligence standard to determine whether corporal punishment constituted child abuse. *P.R.*, 801 A.2d at 486-87. Thereafter, in *F.R.*, this Court recognized that, following the Supreme Court's decision in *P.R.*, the General Assembly amended the CPSL and codified the criminal negligence standard "in the CPSL under the auspices of the definition of 'non-accidental.'" *F.R.*, 4 A.3d at 787. While the term "non-accidental" can no longer be found in the current version of the CPSL, the criminal negligence standard remains the proper standard to be used in corporal punishment cases, as the Supreme Court's decision in *P.R.* has not been overturned.

observe in J.K.'s situation. Other than the use of a wooden stick rather than his open hand, J.K.'s actions were no different from when he has previously "swatted" Child's buttocks as a form of discipline. For these reasons, we conclude that BHA did not commit an error of law in determining that CYS failed to present substantial evidence to support the indicated report of child abuse.[13]

Accordingly, we affirm the order of the Secretary of DHS.

P. KEVIN BROBSON, Judge

---

[13] Because we have concluded that the record evidence is sufficient to support the ALJ's determination that J.K.'s actions were not criminally negligent or reckless, we need not consider whether the ALJ erred in determining that Child did not sustain bodily injury. We note, however, that the ALJ seems to have conflated substantial pain with impairment of physical condition. In addition, while evidence that a child received medical treatment (*i.e.*, medical care and/or medication to manage pain) may show that a child suffered "substantial pain," the absence of treatment does not necessarily establish the absence of "substantial pain." Whether to seek medical treatment is oftentimes a decision beyond the control of the child. Administrative law judges, therefore, should exercise caution before drawing any conclusions regarding the extent of pain from the absence of medical treatment.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Children and Youth Services :
for the County of Berks, :
                   Petitioner :
                            :
         v. : No. 1175 C.D. 2017
                            :
Department of Human Services, :
                Respondent :

# **O R D E R**

AND NOW, this 7th day of May, 2018, the order of the Secretary of the Department of Human Services is hereby AFFIRMED.

<br>

                                             
P. KEVIN BROBSON, Judge