Bedford County Children and Youth : **SEALED CASE**
Services, :
                                    Petitioner :
                                              :
            v.                                :
                                              :
Department of Human Services,       : No. 950 C.D. 2018
            Respondent              : Submitted: March 22, 2019

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED:  July 9, 2019


        Bedford County Children and Youth Services (BCCYS) petitions this
Court for review of the Department of Human Services (DHS), Bureau of Hearings
and Appeals' (BHA) June 29, 2018 order granting minor child's (Minor)[1] mother's
(M.N.) request to expunge her indicated report[2] of child abuse from the ChildLine &
Abuse Registry (ChildLine).[3]  BCCYS essentially presents one issue for this Court's

---

[1] Minor's date of birth is July 25, 2015.

[2] Section 6303(a) of the Child Protective Services Law (Law) defines an "indicated report" as a report issued by DHS if it "determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or] (iii) [a]n admission of the acts of abuse by the perpetrator."  23 Pa.C.S. § 6303(a); *see also* Section 3490.4 of DHS' Regulations, 55 Pa. Code § 3490.4.

[3] Section 3490.4 of the DHS Regulations defines "ChildLine" as

> [a]n organizational unit of [DHS] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . .

55 Pa. Code § 3490.4.  "[ChildLine] is maintained in accordance with the [Law.]"  *In re: S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014).

review: whether the BHA erred by concluding that BCCYS failed to present substantial evidence to prove that M.N. committed child abuse.[4] Upon review, we reverse.

On June 1, 2017, BCCYS received a report of M.N.'s and her paramour C.C.'s suspected physical abuse of Minor. *See* Reproduced Record (R.R.) at 11a-13a. By June 2, 7 and 26, 2017 letters, BCCYS notified M.N. and Minor's biological father that it received the abuse report and commenced an investigation. *See* R.R. at 105a-120a. BCCYS caseworker Ashley Black (Black) investigated the report and determined that, while in the primary care of M.N. and C.C., then-17-month-old Minor was treated six times in six months for injuries, the causes of which M.N. could not readily explain. *See* R.R. at 11a-13a, 23a-63a, 82a-103a, 148a, 152a.

As part of UPMC Children's Hospital of Pittsburgh's (UPMC) Child Abuse Initiative protocol, Child Advocacy Center Division Chief Rachel P. Berger, M.D. (Dr. Berger), an expert in child abuse pediatrics, *see* R.R. at 161a, reviewed Minor's UPMC medical records. Based upon her evaluation, Dr. Berger requested a child abuse screening exam, which was conducted on June 7, 2017 at UPMC. BCCYS removed Minor from M.N.'s care that same day. On July 31, 2017, BCCYS filed an indicated report against M.N. as a perpetrator of abuse against Minor. *See* R.R. at 11a-13a.

By notice mailed August 21, 2017, DHS informed M.N. that she was listed on ChildLine as a perpetrator in an indicated report of child abuse. *See* R.R. at 14a. On October 2, 2017, M.N. requested DHS' Secretary's review of BCCYS' report. *See* R.R. at 15a-17a. By October 16, 2017 letter, the Secretary's designee

---

[4] BCCYS presents two issues in its Statement of the Questions Involved: (1) whether the BHA erred by expunging M.N.'s indicated report, and (2) whether substantial evidence supported the BHA's finding that M.N. committed child abuse. *See* BCCYS Br. at 6. Because BCCYS did not divide its argument, and these issues are subsumed in whether there was substantial record evidence to support the BHA's decision, the issues will be addressed together.

stated: "We believe the report is accurate and being maintained in a manner consistent with the Child Protective Services Law [(Law)[5]]. Thus[,] the report will remain on file as originally reported." R.R. at 18a. On January 12, 2018, M.N. appealed to the BHA. *See* R.R. at 19a-20a.

A hearing was held on May 17, 2018 before an Administrative Law Judge (ALJ). *See* R.R. at 137a-176a. On June 29, 2018, the ALJ issued an adjudication and recommendation that the BHA grant M.N.'s appeal because BCCYS failed to prove that M.N. committed child abuse. *See* R.R. at 123a-135a. Also on June 29, 2018, the BHA adopted the ALJ's recommendation in its entirety. *See* R.R. at 122a. BCCYS appealed to this Court.[6]

BCCYS argues that the BHA erred by expunging M.N.'s indicated report where BCCYS met its burden of proving by substantial evidence that M.N. committed child abuse upon Minor.

Initially, Section 6341(a)(2) of the Law authorizes "the [S]ecretary to . . . expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the Law]." 23 Pa.C.S. § 6341(a)(2). "[T]he proper inquiry into whether an indicated report of child abuse should be expunged is whether the report is accurate." *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 653 (Pa. Cmwlth. 2012).

BCCYS brought this action pursuant to Section 6381(d) of the Law, which states:

> Evidence that **a child**[7] has **suffered child abuse** of such a
> nature as would ordinarily not be sustained or exist except

---

[5] 23 Pa.C.S. §§ 6301-6386.

[6] "Our review [of BHA's order] determines whether constitutional rights were violated, whether errors of law were committed or whether necessary findings of fact are supported by substantial evidence." *S.H.*, 96 A.3d at 453 n.4.

[7] Section 6303(a) of the Law defines "child" as "[a]n individual under 18 years of age." 23 Pa.C.S. § 6303(a).

**by reason of the acts or omissions of the parent**[8] or other person responsible for the welfare of the child **shall be prima facie evidence of child abuse by the parent** or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d) (emphasis added). "Child abuse" is defined in Section 6303(b.1)(1) of the Law as "[c]ausing bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(1). "Bodily injury" is defined therein as an "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a).

"[BCCYS] has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate."[9] *Bucks Cty. Children & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990, 993 (Pa. Cmwlth. 2002). Section 6303(a) of the Law defines "substantial evidence" as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion."[10] 23 Pa.C.S. § 6303(a); *see also G.V. v. Dep't of Pub. Welfare*, 91 A.3d 667 (Pa. 2014); *In re: S.H.*, 96 A.3d 448 (Pa. Cmwlth. 2014). "If [BC]CYS fails to sustain [its] burden, a request for expungement will be granted." *Bucks Cty.*, 808 A.2d at 993.

---

[8] Section 6303(a) of the Law defines "parent" as "[a] biological parent . . . ." 23 Pa.C.S. § 6303(a).

[9]      '[I]n an expunction hearing the standard of proof is preponderance of the evidence, and the statutory standard for the evidence is '[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion. 23 Pa.C.S. § 6303(a).'' *A.P. v. Dep*[*']*t of Pub*[.] *Welfare*, 98 A.3d 736, 742-43 (Pa. Cmwlth. 2014).

*Allegheny Cty. Office of Children, Youth & Families v. Dep't of Human Servs.*, 202 A.3d 155, 163 (Pa. Cmwlth. 2019). "Whether the evidence satisfies the statutory standard is a question of law." *Id.*

[10]"[I]n determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable and logical inferences that may be drawn from the evidence of record[.]" *S.T. v. Dep't of Pub. Welfare, Lackawanna Cty. Office, Children, Youth & Family Servs.*, 681 A.2d 853, 856 (Pa. Cmwlth. 1996).

At the May 17, 2018 hearing,[11] Dr. Berger testified that, under UPMC's Child Abuse Initiative, she receives a spreadsheet every Monday listing the names of minor patients for whom ChildLine reports were made by UPMC staff, and she has access to UPMC records related thereto. *See* R.R. at 148a-151a. Dr. Berger explained that, as part of a quality improvement initiative, she reviews the medical records underlying each UPMC ChildLine report to ensure that UPMC staff conducted a proper evaluation. *See* R.R. at 149a-150a. Dr. Berger described: "[I]f there is a concern that [] the appropriate testing hasn't been done, there was not a report made when it should have been made, [or] when there needs to be clarification, [the] team at the Child Advocacy Center will follow up with those reporting sources or with [BCCYS] directly." R.R. at 150a.

Dr. Berger recalled that Minor's name first appeared on her spreadsheet after Minor was treated at UPMC on December 31, 2016. *See* R.R. at 150a. She testified that she reviewed UPMC's reports of Minor's visits in UPMC's records system, *see* R.R. at 151a, that reflected:

- **December 31, 2016** - UPMC emergency department (ED) evaluation for red, swollen penis; right forehead, left and right cheek and left elbow bruising, and nose abrasions. *See* R.R. at 24a-31a, 148a, 150a, 152a.

- **January 11, 2017** - UMPC ultrasound following personal care physician visit for swollen penis and scrotum bruising. *See* R.R. at 32a-38a, 152a-153a.

- **March 18, 2017** - UPMC ED evaluation for a red, swollen right ear. *See* R.R. at 39a-41a, 153a-154a.

- **April 5, 2017** - UPMC ED evaluation for inability to bear weight on left leg; returned April 6, 2017 for left tibial fracture splinting. *See* R.R. at 42a-48a, 154a-155a.

---

[11] M.N. did not appear at the May 17, 2018 hearing. *See* R.R. at 124a. Because the hearing had already been rescheduled twice (at BCCYS' request, and M.N. had waived the 90-day hearing requirement), and M.N. had notice of the May 17, 2018 hearing, the ALJ proceeded in her absence. *See* R.R. at 124a, 142a-143a.

5

- **June 1, 2017** - UPMC ED evaluation for one-day-old scalp contusion, a 4- to 5-day-old right eye contusion and right ear infection. *See* R.R. at 49a-53a, 155a-156a.
- **June 4, 2017** - UPMC ED evaluation for continued scalp contusion tenderness, vomiting and abnormal balance. *See* R.R. at 54a-57a, 156a-157a.

Dr. Berger admitted that she did not personally treat or examine Minor. *See* R.R. at 161a.

Dr. Berger concluded, with a reasonable degree of medical certainty that, based on her review of Minor's records and the nature and locations of the injuries, the December 31, 2016 and January 11, April 5, June 1 and June 4, 2017 medical visits resulted from child abuse. *See* R.R. at 152a-166a. She could not say for sure that the March 18, 2017 visit was due to child abuse, but nevertheless declared it "concerning." R.R. at 163a. Dr. Berger also pronounced that "[e]ach individual injury caused [Minor] substantial pain." R.R. at 159a.

Dr. Berger recounted that, based upon the rapid succession in which Minor was seen for injuries, on June 7, 2017, she requested that UPMC conduct a skeletal survey from Minor's medical records.[12] *See* R.R. at 57a-63a, 158a. Dr. Berger declared that since Minor was removed from M.N.'s care on June 7, 2017 (at least until the date of the May 2018 hearing), with the exception of an ear infection, Minor had not been treated at UPMC or by his primary care physician. *See* R.R. at 65a-78a, 158a-160a. Dr. Berger opined: "[A] clumsy child doesn't unclumsy in a year." R.R. at 159a. The ALJ found that "Dr. Berger testified credibly." R.R. at 127a.

---

[12] Dr. Berger did not want to subject Minor to another medical visit. *See* R.R. at 158a, 161a-162a.

Black testified that she began her investigation on June 9, 2017[13] and, as part of her investigation, she reviewed Minor's medical records, visited Minor and interviewed M.N.[14] *See* R.R. at 81a-95a. Black's testimony consisted primarily of her reading her investigation report into the record. Therein, Black stated that "[M.N.] sought medical attention for each of the injuries but could not give any explanation as to why or how these injuries occurred at the time." R.R. at 170a. Based upon M.N.'s admissions, Black concluded that M.N. and C.C. "could not properly supervise Minor." R.R. at 170a; *see also* Supplemental Record (S.R.) at 37; R.R. at 174a. Black explained that, although she had regular contact with Minor during the investigation, she did not observe that Minor had any injuries. *See* R.R. at 174a. Black admitted:

> [BCCYS COUNSEL] Is it fair to say that a primary component in your indicated reports for both [M.N. and C.C.], you and [BCCYS] relied heavily on the medical records and Dr. Berger's review of those medical records?
>
> [BLACK] Correct.

S.R. at 37. Black confirmed that she did not speak to any of Minor's treating physicians, but rather "the records that we had received from [Dr.] Berger, we used those to review the injuries." S.R. at 44; *see also* R.R. at 80a-103a. The ALJ found that "Black testified credibly." R.R. at 127a.

---

[13] Black was out of town when the report was initially made to BCCYS, so she began her investigation when she returned to the office on June 9, 2017. *See* R.R. at 173a.

Another BCCYS caseworker checked on Minor within 24 hours of receiving the abuse report. *See* R.R. at 173a. Minor was placed into foster care on June 7, 2017, where Minor remained for several months before being placed with Minor's great grandmother. *See* Supplemental Record (S.R.) at 39.

[14] C.C. did not respond to Black's interview requests. *See* R.R. at 174a.

Based upon the evidence presented, the ALJ made findings[15] that Minor was a child under the Law, and that Minor's mother, M.N., was a parent responsible for Minor's care. *See* ALJ Adj. at 10-11; R.R. at 133a-134a. Regarding whether Minor suffered bodily injury, the ALJ concluded that, although "evidence contained in the medical records presents a troubling narrative[,]" BCCYS' case was based solely upon uncorroborated hearsay and, thus, M.N.'s appeal must be sustained. ALJ Adj. at 11; R.R. at 134a. The ALJ articulated:

> Dr. Berger never saw the subject child. Her testimony was based on her review of medical records. [] Black only began working on the investigation on June 9, 2017. Although she did have some contact with [Minor] (who would have been essentially nonverbal, as [Minor] was nearing [Minor's] second birthday when the ChildLine report was made) she admittedly never saw any injuries on [Minor]. Both witness[es'] knowledge of injuries to [Minor] was gained from what they saw in the medical records. [] Black also interviewed [M.N.], but testified [BC]CYS 'relied heavily' on the medical records and the records were the 'primary component' of the basis for the indicated report.
>
> The records are out[-]of[-]court statements. The medical providers who saw [Minor], observed [Minor's] injuries and created the records of the [doctor] and [hospital] visits did not testify. Dr. Berger and [] Black testified to what the records said, and offered this information for the truth of the matter asserted. This is a classic example of hearsay. . . .
>
> . . . .
>
> Ultimately, because the only evidence on this issue is uncorroborated hearsay evidence, there is not substantial evidence to demonstrate there was bodily injury to [Minor].

---

[15] "The [ALJ] is the ultimate finder of fact." *Bucks Cty.*, 808 A.2d at 993. "In adopting the ALJ's adjudication, the BHA became the final fact-finder in this expunction appeal." *R.J.W. v. Dep't of Human Servs.*, 139 A.3d 270, 285 (Pa. Cmwlth. 2016). "Absent an abuse of discretion, [this Court] will not disturb the BHA's determinations as to credibility and evidentiary weight." *Id.*

> . . . . [T]he [ALJ] is compelled to make her determination in accord with the regulations and case law. The relevant authorities plainly set forth that [BCCYS] must present substantial evidence, which is more than uncorroborated hearsay, in order to support an individual being indefinitely listed [on ChildLine]. **Without non-hearsay evidence, there is no substantial competent evidence to support [M.N.] being listed on ChildLine.** It is ultimately up to [BCCYS] to present such evidence, and [it] failed to do so in this case.

ALJ Adj. at 11-12; R.R. at 134a-135a (emphasis added; record citation omitted).

"Hearsay is defined as an out[-]of[-]court statement, either written or oral, offered in court for the purpose of proving the truth of the matter contained in the statement." *Feinberg v. Unemployment Comp. Bd. of Review*, 635 A.2d 682, 685 n.4 (Pa. Cmwlth. 1993). Hearsay "is generally inadmissible because such evidence lacks guarantees of trustworthiness fundamental to the Anglo-American system of jurisprudence." *Commonwealth v. Chamberlain*, 731 A.2d 593, 595 (Pa. 1999); *see also* Pa.R.E. 802.

Although, "[u]nder the Commonwealth's Administrative Agency Law[,] Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings[,] . . . 2 Pa.C.S. § 505[,]" *A.Y. v. Dep't of Pub. Welfare, Allegheny Cty. Children & Youth Servs.*, 641 A.2d 1148, 1150 (Pa. 1994), the law is well established that "[h]earsay evidence, [a]dmitted without objection,[16] will be given its natural probative effect and may support a finding . . . , [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand." *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976) (emphasis in original); *see also City of Phila. v. Workers' Comp. Appeal Bd. (Knudson)*, 165 A.3d 1039 (Pa. Cmwlth. 2017); *Shapiro v. State Bd. of Accountancy*, 856 A.2d 864 (Pa. Cmwlth. 2004). Accordingly, this Court has ruled

---

[16] Because M.N. did not attend the hearing, Minor's hospital records were admitted into the record without objection.

9

that "[h]earsay testimony in an administrative proceeding to expunge a [child abuse report] is not substantial evidence unless it is corroborated." *Bucks Cty.*, 808 A.2d at 993.

Conversely, hearsay subject to an exception *is* admissible because it is "premised on circumstances . . . which enhance the reliability [there]of . . . , and render unnecessary the normal judicial assurances of cross-examination and oath[.]" *Chamberlain*, 731 A.2d at 595. Although the Pennsylvania Rules of Evidence do not contain a specific hospital record exception, Section 6108(b) of the Uniform Business Records as Evidence Act (Business Records Act) provides:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian **or other qualified witness** testifies to its identity and the mode of its preparation, and if it was made in the regular course of business[17] at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b) (emphasis added). The Pennsylvania Supreme Court reasoned: "The basic justification for the [Business Records Act] exception to the hearsay rule is that the purpose of keeping business records builds in a reliability which obviates the need for cross-examination." *Williams v. McClain*, 520 A.2d 1374, 1376 (Pa. 1987).

The Pennsylvania Superior Court has explained that "[t]he practice of recording facts has been standardized in the modern hospital and these recorded facts are routinely used to make decisions upon which the health and life of the patient depend." *Commonwealth v. Seville*, 405 A.2d 1262, 1265 (Pa. Super. 1979) (quotation marks omitted). Accordingly, under the Business Records Act exception

---

[17] Section 6108(c) of the Business Records Act defines "business" to include "every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not." 42 Pa.C.S. § 6108(c).

to the hearsay rule, "hospital records [are admissible] to show the fact of hospitalization, treatment prescribed, and symptoms found."[18] *Williams*, 520 A.2d at 1376; *see also B.E. v. Dep't of Pub. Welfare*, 654 A.2d 290 (Pa. Cmwlth. 1995); *Pothier v. Dep't of Transp., Bureau of Traffic Safety*, 511 A.2d 939 (Pa. Cmwlth. 1986); *Sprague v. Walter*, 656 A.2d 890 (Pa. Super. 1995).

In order for documents to be admissible under the Business Records Act, they must be authenticated "as to their identity or mode of preparation."[19] *J.K. v. Dep't of Pub. Welfare*, 721 A.2d 1127, 1133 (Pa. Cmwlth. 1998); *see also* 42 Pa.C.S. § 6108(b). More specifically, in *Williams*, the Pennsylvania Supreme Court cited to the following as "helpful in determining whether a [hospital] record is admissible":

> A medical record is admissible under the [Business Records Act] exception to the hearsay rule if the report: (1) was made contemporaneously with the events it purports to relate, (2) at the time the report was prepared, it was impossible to anticipate reasons which might arise in the future for making a false entry in the original, and (3) the person responsible for the statements contained in the report is known.

*Id.* at 1376 (quoting *Isaacson v. Mobil Propane Corp.,* 461 A.2d 625, 629 (Pa. Super. 1983)).

Consequently, the medical records Dr. Berger and BCCYS relied upon herein were admissible as a hearsay exception under the Business Records Act.

---

[18] "The same built-in reliability does not exist for medical opinions expressed in the hospital records." *Primavera v. Celotex Corp.*, 608 A.2d 515, 524 (Pa. Super. 1992). Therefore, "[o]pinion evidence contained in hospital records is inadmissible where the [person] who authored those records is unavailable for cross-examination." *Sprague v. Walter*, 656 A.2d 890, 912 (Pa. Super. 1995); *see also Williams v. McClain*, 520 A.2d 1374 (Pa. 1987); *Pothier v. Dep't of Transp., Bureau of Traffic Safety*, 511 A.2d 939 (Pa. Cmwlth. 1986).

[19] Pennsylvania Rule of Evidence 901(a) provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce **evidence sufficient to support a finding that the item is what the proponent claims it is**." Pa.R.E. 901(a) (emphasis added).

*Williams*. Specifically, Dr. Berger identified the 41 pages of Minor's medical records upon which she relied, described that they were created by the treating medical staff and maintained in UPMC's system, and explained that they were available to her under UPMC's Child Abuse Initiative. *See* R.R. at 148a, 151a-152a, 166a. Moreover, Dr. Berger's opinions were rendered based upon the facts of and symptoms leading to Minor's UPMC hospitalizations, not upon the UPMC staff's opinions or diagnoses. Because it is also evident from the electronic notations thereon that the records were created by treating UPMC staff specifically named therein in UPMC's system within a short time after the corresponding treatments,[20] and they were based upon M.N.'s statements of fact,[21] under the totality of the circumstances presented in this case, this Court concludes that Minor's medical record "sources of information, method and time of preparation were such as to justify [their] admission." 42 Pa.C.S. § 6108(b); *see also Williams*; *J.K.* Because BCCYS met its burden of establishing by substantial record evidence that Minor suffered child abuse by reason of M.N.'s acts or omissions and, thus, M.N.'s indicated report is accurate, the ALJ and the BHA erred by concluding otherwise.

---

[20] Although "[i]t is not necessary to show the identity of the maker or his personal knowledge of events[,]" under the Business Records Act exception, *Pothier*, 511 A.2d at 940, the electronic entries were created by treating UPMC staff in UPMC's system as follows: December 31, 2016 at 5:44 p.m. for a 5:40 p.m. visit, and 7:26 p.m. for follow-up, *see* R.R. at 24a-31a; January 11, 2017 at 4:01 p.m. for a 3:51 p.m. ultrasound, *see* R.R. at 38a; March 18, 2017 at 3:22 a.m. for a 3:16 a.m. visit, *see* R.R. at 39a-41a; April 5, 2017 notes created between 7:20 p.m. and 9:21 p.m. for a 6:53 p.m. visit, *see* R.R. at 42a-48a; June 1, 2017 at 12:42 p.m. for a 12:26 p.m. visit, *see* R.R. at 49a-53a; June 4, 2017 at 9:46 p.m. for a 9:36 p.m. visit, *see* R.R. at 54a-57a.

[21] Because Minor was nonverbal, the records reflect that M.N. was the source of UPMC staff's information about Minor's symptoms. *See* UPMC records: December 31, 2016 "Mom states" R.R. at 24a; January 11, 2017 "per [M]om" R.R. at 33a; March 18, 2017 "Mother noticed" R.R. at 39a; April 5, 2017 "Mother thinks" R.R. at 42a; June 1, 2017 "[Mother] states" R.R. at 49a; June 4, 2017 "Mother states" R.R. at 54a. The fact of hospitalizations, symptoms found and treatments prescribed are independent of UPMC staff's and M.N.'s opinions/representations of how the injuries occurred and, thus, any reasons for making false statements.

Based on the foregoing, the BHA's order is reversed.


_____

ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bedford County Children and Youth
Services,
:
                    Petitioner

         v.

Department of Human Services,
                   Respondent

:    **SEALED CASE**
:
:
:
:
:
:
:    No. 950 C.D. 2018
:

## O R D E R

AND NOW, this 9th day of July, 2019, the Department of Human Services, Bureau of Hearings and Appeals' June 29, 2018 order is reversed.

_____
ANNE E. COVEY, Judge